**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LEGEND PICTURES, LLC,

     Plaintiff,                               Civil Action No.: 1:21-cv-05466

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

     Defendants.

<u>**COMPLAINT**</u>

Plaintiff, LEGEND PICTURES, LLC ("LEGEND PICTURES"), hereby files this Complaint against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and hereby alleges as follows:

**JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial internet stores operating under the Defendant or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Defendant Online Stores").

1

Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of LEGEND PICTURES' Trademarks and/or Copyrights. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of LEGEND PICTURES' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused LEGEND PICTURES substantial injury in the State of Illinois.

3. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this judicial district, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this judicial district.

## INTRODUCTION

4. This action has been filed by LEGEND PICTURES to combat online counterfeiters who trade upon LEGEND PICTURES' reputation and goodwill by selling and/or offering for sale products in connection with LEGEND PICTURES' PACIFIC RIM Trademarks and Copyrights, which are covered by U.S. Trademark Registration Nos. 5,840,140; 5,840,142; 6,195,470; 6,205,935 (the "PACIFIC RIM Trademarks") and U.S. Copyright Registration Nos. PA0001859894 and PA0002091781 (the "PACIFIC RIM Works"). The trademark registrations are valid, subsisting, unrevoked, uncancelled, and in full force and effect. The registrations for the trademarks constitute prima facie evidence of validity and of LEGEND PICTURES' exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b). Genuine and authentic copies of the U.S. federal trademark registration certificates for the PACIFIC RIM Trademarks are attached as

**Exhibit 1**. Genuine and authentic copies of the U.S. federal copyright registration certificates for the PACIFIC RIM Copyrights are attached as **Exhibit 2**.

5.      Counterfeit PACIFIC RIM Products, primarily toys coming from China, can be extremely dangerous and present alarming safety hazards to children. LEGEND PICTURES' PACIFIC RIM Products are recognized as a symbol high quality films and merchandise originating from Plaintiff. Plaintiff's film grossed $400 million internationally and became a huge box office success overseas. Defendants are selling unauthorized products derived from the copyrighted subject matter created by LEGEND PICTURES using Plaintiff's Trademarks.

6.      In the past, LEGEND PICTURES was able to police its marks against identifiable infringers and counterfeiters. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for policing actions to be undertaken. The company has availed itself of takedown procedures to remove infringing products, but these efforts have proved to be an unavailing game of whack-a-mole against the mass counterfeiting that is occurring over the Internet. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed LEGEND PICTURES and its ability to police its rights against the hundreds of anonymous defendants which are selling illegal counterfeits at prices substantially below an original:

//

//

ORIGINAL



https://www.amazon.com/stores/page/F3FA91AC-294B-41E3-A886-174AFB284C7B

COUNTERFEIT



4

7.     The above example evidences a cooperative counterfeiting network using fake eCommerce store fronts designed to appear to be selling authorized products. To be able to offer the counterfeit products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As Homeland Security's recent report confirms, counterfeiters act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal counterfeiting network:

> Historically, many counterfeits were distributed through swap meets and individual sellers located on street corners. **Today, counterfeits are being trafficked through vast e-commerce supply chains in concert with marketing, sales, and distribution networks.** The ability of e-commerce platforms to aggregate information and reduce transportation and search costs for consumers provides a big advantage over brick-and-mortar retailers. Because of this, sellers on digital platforms have consumer visibility well beyond the seller's natural geographical sales area.

> . . .

> The impact of counterfeit and pirated goods is broader than just unfair competition. Law enforcement officials have uncovered intricate links between the sale of counterfeit goods and transnational organized crime. **A study by the Better Business Bureau notes that the financial operations supporting counterfeit goods typically require central coordination**, making these activities attractive for organized crime, with groups such as the Mafia and the Japanese Yakuza heavily involved. Criminal organizations use coerced and child labor to manufacture and sell counterfeit goods. In some cases, the proceeds from counterfeit sales may be supporting terrorism and dictatorships throughout the world.

> . . .

> Selling counterfeit and pirated goods through e-commerce is a highly profitable activity: production costs are low, millions of potential customers are available online, transactions are convenient, and listing on well-branded e-commerce platforms provides an air of legitimacy.

*See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19 (emphasis added) attached hereto as **Exhibit 3**.

8.     The Defendant Online Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants use aliases to avoid liability by going to great lengths to conceal both their identities as well as the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables counterfeiters to stymie authorities:

> The scale of counterfeit activity online is evidenced as well by the significant efforts e-commerce platforms themselves have had to undertake. A major e-commerce platform reports that its proactive efforts prevented over 1 million suspected bad actors from publishing a single product for sale through its platform and blocked over 3 billion suspected counterfeit listings from being published to their marketplace. Despite efforts such as these, private sector actions have not been sufficient to prevent the importation and sale of a wide variety and large volume of counterfeit and pirated goods to the American public.
>
> . . .
>
> A counterfeiter seeking to distribute fake products will typically set up one or more accounts on online third-party marketplaces. The ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders. Rapid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked. On these sites, online counterfeiters can misrepresent products by posting pictures of authentic goods while simultaneously selling and shipping counterfeit versions.
>
> . . .
>
> Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors.

*Id.* at 5, 11, 12.

9.      eCommerce giant Alibaba has also made public its efforts to control counterfeiting on its platform.  It formed a special task force that worked in conjunction with Chinese authorities for a boots-on the ground effort in China to stamp out counterfeiters. In describing the counterfeiting networks, it uncovered, Alibaba expressed its frustration in dealing with "vendors, affiliated dealers and factories" that rely upon fictitious identities that enable counterfeiting rings to play whack-a-mole with authorities:

# Fighting China's counterfeits in the online era

Xinhua | Updated: 2017-09-19 14:20                    f  🐦 in +

BEIJING - A secret team in Chinese e-commerce giant Alibaba has the task of pretending to be online consumers who test-buy purchases from the billion-plus products on its platforms.

Alibaba's Anti-Counterfeiting Special Task Force, formed last year, actively works with local law enforcement agencies, said Qin Seng.

"After we clean up online shops selling counterfeits, the counterfeiters usually change their identities and places of dispatch, using more covert means to continue selling online," Qin said.

The team uses big data to identify counterfeits and the vendors, affiliated dealers and factories suspected of producing or selling counterfeit items. They pass evidence to the public security, administration of commerce and industry, quality inspection, food and drug supervision and other law enforcement agencies. At the same time, they investigate the evidence in the field.

The team faces many risks in their offline probes.

"Most counterfeiting dens are hidden and well-organized. For example, we encountered a village producing counterfeits. The villagers installed cameras everywhere and when they saw outsiders entering, they became vigilant and even threatened us," Qin said.

*See* Xinhua, *Fighting China's Counterfeits in the Online Era,* China Daily (Sept. 19, 2017), available at www.chinadaily.com.cn/business/2017-09/19/content_32200290.htm  (**Exhibit 4**).

10.      LEGEND PICTURES has been and continues to be irreparably damaged through consumer confusion, loss of control over its reputation and good-will as well as the quality of

goods bearing the PACIFIC RIM Trademarks and Works. The rise of eCommerce as a method of supplying goods to the public exposes brand holders and creators that make significant investments in their products to significant harm from counterfeiters:

> Counterfeiting is no longer confined to street-corners and flea markets. The problem has intensified to staggering levels, as shown by a recent Organisation for Economic Cooperation and Development (OECD) report, which details a 154 percent increase in counterfeits traded internationally — from $200 billion in 2005 to $509 billion in 2016. Similar information collected by the U.S. Department of Homeland Security (DHS) between 2000 and 2018 shows that seizures of infringing goods at U.S. borders have increased 10-fold, from 3,244 seizures per year to 33,810.
>
> …
>
> The rise in consumer use of third-party marketplaces significantly increases the risks and uncertainty for U.S. producers when creating new products. It is no longer enough for a small business to develop a product with significant local consumer demand and then use that revenue to grow the business regionally, nationally, and internationally with the brand protection efforts expanding in step. Instead, with the international scope of e-commerce platforms, once a small business exposes itself to the benefits of placing products online — which creates a geographic scope far greater than its more limited brand protection efforts can handle — it begins to face increased foreign infringement threat.
>
> . . .
>
> Moreover, as costs to enter the online market have come down, such market entry is happening earlier and earlier in the product cycle, further enhancing risk. If a new product is a success, counterfeiters will attempt, often immediately, to outcompete the original seller with lower-cost counterfeit and pirated versions while avoiding the initial investment into research and design.
>
> . . .
>
> Counterfeiters have taken full advantage of the aura of authenticity and trust that online platforms provide. While e-commerce has supported the launch of thousands of legitimate businesses, their models have also enabled counterfeiters to easily establish attractive "store-fronts" to compete with legitimate businesses.

*See Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (**Exhibit 3**) at 4, 8, 11.

11.     Not only are the creators and brand holders harmed, the public is harmed as well:

The rapid growth of e-commerce has revolutionized the way goods are bought and sold, allowing for counterfeit and pirated goods to flood our borders and penetrate our communities and homes. Illicit goods trafficked to American consumers by e-commerce platforms and online third-party marketplaces threaten public health and safety, as well as national security. This illicit activity impacts American innovation and erodes the competitiveness of U.S. manufacturers and workers.

The President's historic memorandum provides a much warranted and long overdue call to action in the U.S. Government's fight against a massive form of illicit trade that is inflicting significant harm on American consumers and businesses. <u>This illicit trade must be stopped in its tracks</u>.

*Id.* at 3, 4. (Underlining in original).

12.     LEGEND PICTURES' investigation shows that the telltale signs of an illegal counterfeiting ring are present in the instant action. For example, Schedule A shows the use of store names by the Defendant Online Stores that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Defendant Online Stores are using fake online storefronts designed to appear to be selling genuine PACIFIC RIM Products, while selling inferior imitations. The Defendant Online Stores also share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. LEGEND PICTURES is forced to file this action to combat Defendants' counterfeiting of LEGEND PICTURES' registered Trademarks, as well as to protect unknowing consumers from purchasing unauthorized PACIFIC RIM Products over the Internet.

13.     This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this judicial district, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this judicial district. In addition, each defendant has offered to sell and ship infringing products into this judicial district.

## THE PLAINTIFF

14.     LEGEND PICTURES, LLC, is a domestic company having its principal place of business 2900 W. Alameda Ave, Suite 1500, Burbank, California 91505.

15.     LEGEND PICTURES has been engaged in the business of creating, distributing and retailing a variety of multimedia content for over 15 years, including comic books, television shows, and major motion pictures.

16.     LEGEND PICTURES is also in the business of developing, marketing, selling and distributing PACIFIC RIM Products. PACIFIC RIM is a 2013 American science-fiction monster film directed by Guillermo del Toro. The film was released in 2D and 3D in selected theaters and IMAX. PACIFIC RIM received generally positive reviews, and it became a huge box office success overseas. The PACFIC RIM film grossed over $400 million internationally and has been recognized by Forbes as "the rare English-language film in history to cross $400 million while barely crossing $100 million domestic." LEGEND PICTURES, LLC is the official source of PACIFIC RIM Products.

17.     LEGEND PICTURES' brand, symbolized by the PACIFIC RIM Trademarks, is a recognized symbol of high-quality merchandise. The PACIFIC RIM Trademarks are distinctive and identify the merchandise as goods from LEGEND PICTURES. The registrations for the PACIFIC RIM Trademarks constitute prima facie evidence of their validity and of

LEGEND PICTURES' exclusive right to use the PACIFIC RIM Trademarks pursuant to 15 U.S.C. § 1057 (b).

18.     The PACIFIC RIM Trademarks have been continuously used and never abandoned.

19.     LEGEND PICTURES has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the PACIFIC RIM Trademarks and Works. As a result, products bearing the PACIFIC RIM Trademarks and Works are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from LEGEND PICTURES.

## THE DEFENDANTS

20.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Online Stores. Each Defendant targets the United States, including Illinois, and offered to sell and, on information and belief, sold and continues to sell counterfeit PACIFIC RIM Products to consumers within the United States, including Illinois and in this judicial district.

## THE DEFENDANTS' UNLAWFUL CONDUCT

21.     The success of the PACIFIC RIM brand has resulted in its significant counterfeiting. Defendants conduct their illegal operations through fully interactive commercial websites and Online Marketplaces Accounts hosted on various e-commerce sites, such as Amazon, Alibaba, AliExpress, etc. ("Infringing Websites" or "Infringing Webstores"). Each Defendant targets consumers in the United States, including the State of Illinois, and offered to sell and, on information and belief, sold and continues to sell counterfeit products that violate Plaintiffs'

11

intellectual property rights ("counterfeit products") to consumers within the United States, including the State of Illinois.

22.     The Defendant Online Stores intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter LEGEND PICTURES from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting operations. Through their operation of the Infringing Webstores, Defendants are directly and personally contributing to, inducing and engaging in the sale of counterfeit products as alleged, often times as partners, co-conspirators and/or suppliers. Upon information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell counterfeit products.

23.     Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of LEGEND PICTURES' ownership of the PACIFIC RIM Trademarks and Works, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

24.     Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Defendant Online Stores. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Online Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

25.     The counterfeit PACIFIC RIM Products for sale in the Defendant Online Stores

bear similarities and indicia of being related to one another, suggesting that the counterfeit PACIFIC RIM Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Online Stores also include other notable common features, including use of the same store registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

26.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new stores or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring takedown demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2019 U.S. Customs and Border Protection report on seizure statistics indicated that E-Commerce sales have contributed to large volumes of low-value packages imported into the United States. Department of Homeland Security, *Intellectual Property Rights*, September 2020. (https://www.cbp.gov/sites/default/files/assets/documents/2020-Sep/FY%202019%20IPR%20Statistics%20Book%20%28Final%29.pdf), at 12 attached hereto as **Exhibit 5**. In FY 2019, there were 144 million express shipments and 463 million international mail shipments. Over 90 percent of all intellectual property seizures occur in the international mail

13

and express environments. *Id*.

27.     Further, counterfeiters such as Defendants, typically operate multiple credit card merchant accounts and third-party accounts, such as PayPal, Inc. ("PayPal") accounts, behind layers of payment gateways so that they can continue operation in spite of LEGEND PICTURES' enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

28.     Upon information and belief, Defendants also deceive unknowing consumers by using the PACIFIC RIM Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for PACIFIC RIM Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Online Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine PACIFIC RIM Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new websites to the top of search results after others are shut down. As such, Plaintiff also seeks to disable Defendant Online Stores owned by Defendants that are the means by which the Defendants could continue to sell counterfeit PACIFIC RIM Products.

29.     Defendants' use of the PACIFIC RIM Trademarks and Works on or in connection with the advertising, marketing, distribution, offering for sale and sale of the counterfeit products is likely to cause and has caused confusion, mistake and deception by and

14

among consumers and is irreparably harming LEGEND PICTURES. Defendants have manufactured, imported, distributed, offered for sale and sold counterfeit products using the PACIFIC RIM Trademarks and Works and continue to do so.

30.     Defendants, without authorization or license from LEGEND PICTURES, knowingly and willfully used and continue to use the PACIFIC RIM Trademarks and Works in connection with the advertisement, offer for sale and sale of the counterfeit products, through, inter alia, the Internet. The counterfeit products are not genuine PACIFIC RIM Products. LEGEND PICTURES did not manufacture, inspect or package the counterfeit products and did not approve the counterfeit products for sale or distribution. The Defendant Online Stores offer shipping to the United States, including Illinois, and, on information and belief, each Defendant sold counterfeit products into the United States, including Illinois.

31.     Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Counterfeit Goods that infringe upon the PACIFIC RIM Trademarks and Works unless preliminarily and permanently enjoined.

32.     Defendants' use of the PACIFIC RIM Trademarks and Works in connection with the advertising, distribution, offering for sale, and sale of counterfeit PACIFIC RIM Products, including the sale of counterfeit PACIFIC RIM Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

33.     LEGEND PICTURES repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

34.     This is a trademark infringement action against Defendants based on their

unauthorized use in commerce of counterfeit imitations of the registered PACIFIC RIM Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The PACIFIC RIM Trademarks are highly distinctive. Consumers have come to expect the highest quality from LEGEND PICTURES' Products provided under the PACIFIC RIM Trademarks.

35.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the PACIFIC RIM Trademarks without LEGEND PICTURES' permission.

36.     LEGEND PICTURES is the exclusive owner of the PACIFIC RIM Trademarks. LEGEND PICTURES' United States Registration for the PACIFIC RIM Trademarks (**Exhibit 1**) is in full force and effect. Upon information and belief, Defendants have knowledge of LEGEND PICTURES' rights in the PACIFIC RIM Trademarks, and are willfully infringing and intentionally using counterfeits of the PACIFIC RIM Trademarks. Defendants' willful, intentional and unauthorized use of the PACIFIC RIM Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

37.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38.      LEGEND PICTURES has no adequate remedy at law, and if Defendants' actions are not enjoined, LEGEND PICTURES will continue to suffer irreparable harm to its reputation and the goodwill of its well-known PACIFIC RIM Trademarks.

39.      The injuries and damages sustained by LEGEND PICTURES have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement,

promotion, offering to sell, and sale of counterfeit PACIFIC RIM Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

40.     LEGEND PICTURES repeats and incorporates by reference herein the allegations contained in the above paragraphs of this Complaint.

41.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit PACIFIC RIM Products created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with LEGEND PICTURES or the origin, sponsorship, or approval of Defendants' counterfeit PACIFIC RIM Products by LEGEND PICTURES.

42.     By using the PACIFIC RIM Trademarks in connection with the sale of counterfeit PACIFIC RIM Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit PACIFIC RIM Products.

43.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit PACIFIC RIM Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44.     LEGEND PICTURES has no adequate remedy at law and, if Defendants' actions are not enjoined, LEGEND PICTURES will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, et seq.)

45.     LEGEND PICTURES repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

46.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit PACIFIC RIM Products as those of LEGEND PICTURES, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine PACIFIC RIM Products, representing that their products have LEGEND PICTURES' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

47.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

48.     LEGEND PICTURES has no adequate remedy at law, and Defendants' conduct caused LEGEND PICTURES to suffer damage to its reputation and goodwill. Unless enjoined by the Court, LEGEND PICTURES will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV
## COPYRIGHT INFRINGEMENT 17 U.S.C. § 501(a)

49.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

50.     The PACIFIC RIM Copyrights have significant value and have been produced and created at considerable expense. Plaintiff is the owner of the original PACIFIC RIM films, which are covered by Copyright Registrations. (**Exhibit 2**).

51.     Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the PACIFIC RIM Copyrights, including derivative works.

52.     Upon information and belief, Defendants had access to the PACIFIC RIM

Works through Plaintiff's normal business activities. After accessing Plaintiff's Works, Defendants wrongfully created copies of the copyrighted PACIFIC RIM films without Plaintiff's consent and engaged in acts of widespread infringement through posting the infringing derivative works via online websites and digital markets, and the creation and sale of prints.

53.     Plaintiff is informed and believes and thereon alleges that Defendants further infringed Plaintiff's Copyrights by making or causing to be made derivative works from the PACIFIC RIM Works by producing and distributing reproductions without Plaintiff's permission.

54.     Defendants, without the permission or consent of Plaintiff, have, and continue to sell online infringing derivative works of the copyrighted PACIFIC RIM Works. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.).

55.     Further, as a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted PACIFIC RIM Works. Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of the PACIFIC RIM Works.

56.     The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

57.     As a result of Defendants' infringement of Plaintiff's exclusive rights under the copyright statute, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504.

58.     The conduct of Defendants is causing and, unless enjoined and restrained by

this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's Copyrights and ordering that Defendants destroy all unauthorized copies. Defendants' copies, plates, and other embodiments of the PACIFIC RIM Works from which copies can be reproduced should be impounded and forfeited to LEGEND PICTURES as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to LEGEND PICTURES, under 17 U.S.C §503.

### PRAYER FOR RELIEF

WHEREFORE, LEGEND PICTURES prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and permanently enjoined and restrained from:

   a. using the PACIFIC RIM Trademarks and Works or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine PACIFIC RIM Product or is not authorized by LEGEND PICTURES to be sold in connection with the PACIFIC RIM Trademarks and Works;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine PACIFIC RIM product or any other product produced by LEGEND PICTURES that is not LEGEND PICTURES' or not produced under the authorization, control, or supervision of LEGEND PICTURES and approved by LEGEND PICTURES for sale

under the PACIFIC RIM Trademarks and associated with or derived from the PACIFIC RIM Works;

c.  committing any acts calculated to cause consumers to believe that Defendants' counterfeit PACIFIC RIM Products are those sold under the authorization, control, or supervision of LEGEND PICTURES, or are sponsored by, approved by, or otherwise connected with LEGEND PICTURES;

d.  further infringing the PACIFIC RIM Trademarks and Works and damaging LEGEND PICTURES' goodwill;

e.  otherwise competing unfairly with LEGEND PICTURES in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for LEGEND PICTURES, nor authorized by LEGEND PICTURES to be sold or offered for sale, and which bear any of LEGEND PICTURES' trademarks, including the PACIFIC RIM Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, or any other online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit PACIFIC RIM Products; and

h.  operating and/or hosting websites at the Defendant Online Stores registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the PACIFIC RIM Trademarks and/or Works or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine PACIFIC

RIM Product or not authorized by Plaintiff to be sold in connection with the PACIFIC RIM Trademarks and/or Works.

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon LEGEND PICTURES a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

3) Entry of an Order that, upon LEGEND PICTURES' request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as, but not limited to, Amazon, Alipay and Alibaba Group Holding Ltd. ("Alibaba") and any related entities (collectively, "Alipay"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Online Stores, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit PACIFIC RIM Products using the PACIFIC RIM Trademarks and/or Works, including any accounts associated with the Defendants listed on Schedule A;

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit PACIFIC RIM Products using the PACIFIC RIM Trademarks and/or Works; and

c.   take all steps necessary to prevent links to the Defendant Online Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online Stores from any search index;

4) That Defendants account for and pay to LEGEND PICTURES all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages

for infringement of the PACIFIC RIM Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that LEGEND PICTURES be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the PACIFIC RIM Trademarks;

6) For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. §504, at the election of Plaintiffs, in an amount to be determined at trial;

7) That LEGEND PICTURES be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

DATED: October 14, 2021          Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
111 West Jackson Boulevard, Suite 1700
Chicago, Illinois 60604
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***